Roy F. WATTS, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

Appeal No. 85–2435.

United States Court of Appeals, Federal Circuit.

April 1, 1987.

---

Bernard Fensterwald, III, Fensterwald, Alcorn & Bowman, P.C., of Arlington, Va., argued for petitioner.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Carol N. Park-Conroy. Also on brief were Hugh Hewitt, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Earl A. Sanders, Atty., of counsel.

Before DAVIS, Circuit Judge, NICHOLS, Senior Circuit Judge, and ARCHER, Circuit Judge.

NICHOLS, Senior Circuit Judge.

Roy F. Watts appeals the decision of the Merit Systems Protection Board (MSPB or board) Docket No. DC08318110229 affirming the conclusion of the Office of Personnel Management (OPM) that Watts is not entitled to civil service retirement benefits pursuant to 5 U.S.C. § 8332 for his employment with proprietary corporations of the

Central Intelligence Agency (CIA). We affirm.

### Background

Watts was employed as a pilot between April 12, 1947, and April 28, 1967, by various CIA "proprietary" corporations, defined as entities owned by the CIA while operating ostensibly as ordinary commercial enterprises. The first position Watts held was with the China National Relief and Rehabilitation Administration (CNRRA) Air Transport. CNRRA, originally Chennault Air Transport, was a private partnership created at the end of World War II to fly relief supplies throughout postwar China and to assist the anticommunist effort in China. The CIA used the services of CNRRA, later the Civil Air Transport (CAT), on a contract basis from 1947 until 1950. In 1950 the CIA purchased the company. In 1959 CAT was renamed Air America, Inc.

Watts was employed by Air America and its predecessor companies from April 12, 1947, to July 10, 1961. At the time Watts signed an employment contract with the first company, CNRRA, it was privately owned and not a CIA proprietary. Watts' original contract was with CNRRA only, and he did not execute any agreement with the CIA. The terms of Watts' original contract with CNRRA were assumed by each successor to CNRRA and the contract was not altered after the CIA purchased CAT, as then named. Watts has stated that he perceived no change, formal or informal, in the nature of his duties after the CIA acquired CAT. The duties assigned Watts were a mix of ordinary and covert operations.

Watts was later employed between October 1, 1962, and December 17, 1966, for Intermountain Aviation, Inc. (Intermountain), another CIA proprietary. When first hired by Intermountain, Watts was not aware of its connection with the CIA, although sometime after he was hired he learned that Intermountain was also a CIA proprietary. In 1966, Watts, about to leave Intermountain, was offered a GS–13 career appointment as a federal employee. He declined the offer and resigned from Intermountain in December 1966. Watts makes no claim to retirement benefits beyond December 1966. In January 1974, Watts petitioned the CIA for recognition of his work and claimed retirement benefits, beginning the various proceedings leading to the current appeal to this court. A United States District Judge held he should have a "full and fair hearing" before the "appropriate arm of the CSC" (Civil Service Commission), to which the MSPB succeeded.

The Administrative Law Judge (ALJ) of the MSPB disregarded all asserted facts but those which were undisputed. He considered summary judgment was permissible because the case arose before the Civil Service Reform Act of 1978, Pub.L. No. 95–454, which seems to disallow this useful device in adjudication of employee appeals. He cited 5 C.F.R. § 772.31 (1978). He granted OPM's motion for summary judgment on the grounds that Watts was not "appointed in the civil service" as required by 5 U.S.C. § 2105, which sets out the current statutory definition of an employee eligible for civil service retirement benefits. The ALJ, in reaching this conclusion, considered Watts' testimony and concluded that it is "abundantly clear" that Watts never considered himself a federal employee and neither was he considered an employee by the CIA. There was no intent on either side, according to the ALJ, to effectuate an appointment to the civil service. The full board, by order on January 11, 1985, declined to review this initial decision and therefore adopted the decision. Watts' appeal to this court followed, delayed by a stay by this court pending the outcome of the court's decision in *Horner v. Acosta*, 803 F.2d 687 (Fed.Cir.1986).

### Analysis

#### I

The legal issue on appeal is whether an employee of a CIA proprietary is "appointed in the civil service" and, therefore, entitled to civil service retirement benefits solely on the basis of the CIA's ownership of the corporation. As is explained below, Section III, the requirement that the "employee" be "appointed" excludes one whose services are retained merely by contract.

The value of Watts' work is not denied or questioned, but Congress clearly did not intend to award retirement benefits to all persons who might be thought to deserve them. It can, itself, add to the entitlements it has created when it deems it right to do so. The importance of this case is its extraordinary implications for the civil service. The position urged by Watts would create a new category of employees who, without formal appointment or even awareness of the government's role when employed, would become "appointed" civil servants, in numbers unknown, and without thought as to their effect on actuarial soundness of the retirement fund. The implications of Watts' position might extend further to cover employees of corporations, privately owned, yet primarily producing goods or services for the government. We conclude that, in the absence of formal or even intended appointment, Watts is not an "employee" for the purposes of the civil service system.

The provisions of 5 U.S.C. § 8332 establish that service as an "employee" is creditable for civil service purposes. The term "employee" by cross reference is defined in 5 U.S.C. § 2105(a) as follows:

(a) For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

   *     *     *     *     *     *

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a).

In *Acosta,* this court concluded that an individual must satisfy all three elements of section 2105(a) to be considered a federal employee and that the requirements for these elements are strictly construed. *Acosta,* 803 F.2d at 691–92.

The question of the nature of "appointment" was at the heart of the case in *Acosta* as it is here. The board had held that the contract executed between the Navy and the employees was sufficient to establish "appointment." Judge Archer writing for the court rejected this argument and noted that:

The established rule is that one is not entitled to the benefit of a [government] position until he has been duly appointed to it. * * * The precedents binding on this court have required that there be a significant degree of formality in the appointment process.

*Acosta,* 803 F.2d at 692.

These principles were derived in part from *Baker v. United States,* 614 F.2d 263, 268 (Ct.Cl.1980) (concluding that "an individual cannot hold a government position * * * nor receive the salary and other benefits pertaining thereto, until he or she has been appointed to that position by a person authorized to make that appointment") and *Costner v. United States,* 665 F.2d 1016, 1020, 229 Ct.Cl. 87 (1981) ("[a]n abundance of federal function and supervision will not make up for lack of an appointment").

In concluding that the respondent employees were not "appointed" in the civil service, Judge Archer examined the indicia of appointment such as whether the employees were paid through the civil service system, given an oath of office, or asked to sign an SF 50 or 52. *Acosta,* 803 F.2d at 694. As noted in a footnote, another indication of civil service status was that one was not subject to Social Security withholding. The court concluded, in the absence of these indicia or a clear and unequivocal document of appointment, that there was no appointment to the civil service within the meaning of 5 U.S.C. § 2105(a). *Id.*

Although the parties in *Acosta* stipulated that each of the respondents was engaged in the performance of a federal function and was supervised by a federal official, thereby eliminating two of the section 2105(a) tests from the court's scrutiny, we read *Acosta* to mean that the question of appointment, by itself, controls the question of whether an individual is an "employ-

ee" for the purpose of civil service retirement. *Accord Baker*, 614 F.2d at 266.

## II

We now address, in light of the opinion in *Acosta*, the question of whether Watts was "appointed" to the civil service by virtue of his employment with a CIA proprietary. As a preliminary matter, we note that Watts' argument that different standards apply to pre-title 5 claims for retirement was directly rejected in *Costner*. In that case, the court found that:

Section 2105(a) was first enacted in 1966 in the wholesale revision of title 5. * * * The legislative history is quite clear, however, that its provisions represented existing law and made no changes in the substantive requirements imposed on the plaintiff [to establish that he is an "employee"]. * * * The commission [Civil Service Commission] has used precisely these same criteria since 1944. (citations omitted)

*Costner*, 665 F.2d at 1019 n. 14.

■ In regard to the issue of appointment, Watts, citing the holding in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), argues that formalities of appointment are only evidence of appointment and do not control whether there actually was an appointment. In effect, Watts argues that the circumstances as a whole indicate the intention to appoint Watts to the civil service. The court in *Acosta* distinguished *Marbury* and rejected precisely this argument, noting that *Marbury* involved a failure to deliver a commission, not a requirement of appointment. *Acosta*, 803 F.2d at 693. The formalities of the appointment *were* observed in *Marbury*. *Id.* In *Costner* the former Court of Claims also rejected the "totality of the circumstances" test suggested by Watts for determining whether there is "appointment." *Costner*, 665 F.2d at 1020.

■ Watts offers no other basis for finding "appointment" to the civil service. The undisputed facts of this case indicate that Watts never executed an SF 50 or 52 or any other standard form or document creating a nexus between him and the government, was never given an oath of office, and was not aware of the CIA's involvement until after his employment contract was executed. Acceptance is important, as membership in the civil service imports burdens as well as benefits. The cases mentioning standard forms and oaths of office do not necessarily exclude other rituals that may be devised to signalize an appointment from time to time. The essential prerequisites are an authorized appointing officer who takes an action that reveals his awareness he is making an appointment in the United States civil service, and action by the appointee denoting acceptance. The evidence that the CIA at one point offered Watts a "career position" in the federal service in 1966, and he refused, implies that both he and the CIA correctly did not consider that he was already in the civil service. It is clear the CIA knew how to create positions whose incumbents were "employees" within the statutory definition.

■ We do not accept the proposition suggested by Watts that an individual can become a federal employee in a passive manner without appointment, or with appointment only to the service of a private carrier, and even without an awareness at the beginning of the contractual relationship, of the involvement of the government. The status of "employee" requires an unequivocal intention to bring an individual within the civil service. *Acosta*, 803 F.2d at 692–94. Employees of government proprietaries, without appointment, are not such "employees." The case of the overt government corporation, such as the former Reconstruction Finance Corporation, differs for many reasons and our holding does not apply to it. We hold that the board's finding that Watts was never "appointed" in the civil service is supported by all the facts.

## III

■ As an alternative to relief under the provisions of section 2105, Watts argues that he is entitled to civil service credit for "contract services" pursuant to the provisions of the Federal Personnel Manual Supplement. FPM Supp. 831–1, Subch. S3–3(c) (March 29, 1985). Watts

also suggests relief is available under 5 C.F.R. § 831.201 as well as other "informal" internal guidance. In *Acosta,* this court reversed the board on this point:

> [Congress] * * * defined employee for purposes of the CSRA in a manner which is inconsistent with the FPM language on contract service. Thus * * * it [FPM Supplement] has been made obsolete by the enactment of the statutory definition of employee. And the broad decision of the Board that appointment is not a required element of respondents' case cannot withstand the express appointment requirement of the statutory definition.

*Acosta,* 803 F.2d at 695.

Appointment is the normal way of filling a civil service position, and it is distinguished from employment by contract. *United States v. Hopkins,* 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976). In that case, consent to suit on contracts of nonappropriated fund agencies in 28 U.S.C. § 1491 is held to exclude appointed employees' pay claims. An employment contract is not necessarily inconsistent with an appointment. We do not wish to be understood as holding that the government may not employ a person under both forms simultaneously. The point is that the occurrence of either one does not necessarily imply the other.

### IV

■ Watts asserts procedural due process error in this case and claims he was not allowed adequate discovery. We conclude that neither grounds provide reversible error. Watts has failed to assert what he might have learned from additional discovery, and it is precisely his own assertions of the facts as to his employment that refute his claim that he was an "employee" during his service with CIA proprietaries. Without support provided for the relevance of additional discovery, we find there was no abuse of discretion in denying such discovery.

■ Watts' due process issue concerns the board's decision that an evidentiary hearing in this case was not necessary and not required by statute. Watts concedes that he is not entitled to a hearing under the "old rules" applicable to his case. Based on our review of 5 C.F.R. § 1201.191-(b) concerning pending proceedings and the then applicable 5 C.F.R. § 772.311(a) (1978) concerning appeals to the CSC, we agree that a hearing, prior to the enactment of the Civil Service Reform Act, was discretionary. Watts suggests, however, that the board abused its discretion in failing to provide a hearing. We hold, from a review of the record, that the board did not abuse its discretion by denying Watts' request for a hearing which, in view of absence of dispute as to the facts, really meant an opportunity for oral argument as to the law. The board relied on adequate and extensive written testimony provided by Watts and other appellants joined in the appeal to the board as well as on documents and records provided by the appellants.

Watts' additional contention that the record was insufficient to reach a conclusion using standards parallel to summary judgment is also without merit. The OPM properly considered the available facts in light least favorable to the government and reached a "summary judgment," upheld by the board, based on evidence primarily presented by Watts and other appellants. This conclusion that "summary judgment" was appropriate is tied as well to the conclusion that an oral hearing was discretionary and, in this case, not necessary.

### *Conclusion*

The board's conclusion that Watts was not "appointed" to the civil service as per 5 U.S.C. § 2105(a) or entitled to civil service benefits under other pre-CSRA standards is consistent with all the facts and correct as a matter of law.

AFFIRMED.