**Marian S. BEVANS, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 89–3396.

United States Court of Appeals, Federal Circuit.

April 12, 1990.

Rehearing Denied May 23, 1990.

Richard L. Stanley, Arnold, White & Durkee, Houston, Tex., argued for petitioner. With him on the brief was Maureen Ebersole, Baker & McKenzie, San Francisco, Cal.

Mark Melnick, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were James S. Green, Acting Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Earl A. Sanders, Atty., Office of Gen. Counsel, Office of Personnel Management, of counsel.

Before NIES and ARCHER, Circuit Judges, and FRIEDMAN, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This petition to review challenges the decision of the Merit Systems Protection Board (Board), affirming the reconsideration decision of the Office of Personnel Management (OPM) that, in determining the petitioner's survivorship benefits of her deceased husband, a federal employee when he died, the time he spent as an employee of a proprietary corporation of the Central Intelligence Agency (CIA) could not be included. *Bevans v. Office of Personnel Management*, No. SF08318910383 (M.S.P.B. Jun. 23, 1989). We affirm.

I

The basic facts, as found by the Board and as shown by the record, are as follows.

In the 1960's and 1970's, the CIA had several so-called proprietary corporations, which it owned. Two of these were Air America, Inc. (Air America) and its subsidiary, Air Asia Company, Ltd. (Air Asia). These companies were air carriers that operated primarily in the Far East and that the CIA used in conjunction with its operations. (Apparently the CIA used these companies interchangeably, and in this opinion we usually refer to either or both of them as "Air America."). Air America had a large number of employees. Some of its officials also were CIA employees.

The petitioner's deceased husband, Henry P. Bevans (Bevans), was a lawyer with considerable experience in airline work. In early 1964, Clyde Carter, the secretary and legal counsel of Air America, suggested to Bevans the possibility of his working for that company. After discussions, Mr. George A. Doole, Jr., the chief executive officer of Air America, who also was an undercover CIA employee, offered Bevans a position as an attorney with Air America. Bevans was to start work in Washington, D.C., but shortly thereafter would be moved to Taipei, Taiwan. The offer of employment, on an Air Asia letterhead, stated: "This letter constitutes the only authorized offer of employment to you from or on behalf of the Company."

Bevans accepted the offer and began work in Washington, D.C., on August 3, 1964.

In a handwritten 1980 letter from Bevans to another former Air America employee, Jerry Fink, in connection with Fink's appeal to the Board from OPM's denial of Fink's claim for civil service retirement credit for Fink's service with that company, Bevans stated:

> Sometime during that first week (probably Aug. 5), after reviewing the corporate files, I raised with Mr. Bastian the question of the exact relationship between Air America and Southern. At that point, I was taken into Mr. Doole's office. <u>He administered to me the oath set out in Title 5, Sec. 3331</u> and gave me a detailed explan[ation] of the ownership, control and management of Air America, Inc. and its associated companies. [Underlining in original.]

Bevans worked for Air America and Air Asia until December 1976. During that employment, government retirement contributions were not deducted from his salary and deductions sometimes were made for Social Security taxes. In March 1977, Bevans went to work as a civilian for the United States Air Force. None of his Air America employment was credited to him for retirement or leave computation purposes, and he made no objection despite the adverse immediate effect that had on the amount of leave. While so employed, he died in January 1982.

His widow, the petitioner, filed an application for survivor benefits. The application was based upon Bevans' service with both Air America and the Air Force. In response to a request from her lawyer, the CIA declined to certify Bevans' employment with Air America "as federal service for the purpose of obtaining certain federal death benefits" because "[e]mployees of Air America, Inc., are not federal employees within the meaning of 5 U.S.C. § 2105(a), which is the operative definition for purposes of civil service retirement credit. 5 U.S.C. § 8331(1)(A)."

In its reconsideration decision, OPM ruled that "because he was not appointed in the civil service during the term of his contract from August 3, 1964 through December 6, 1976 his service during this period is not creditable for civil service retirement purposes."

The Board affirmed that decision. The administrative judge, whose initial decision became the decision of the Board, found that the petitioner

has failed to establish by preponderant evidence that her husband was appointed to a position in the civil service. There is no clear and unequivocal document appointing Mr. Bevans to the civil service. In addition to the absence of any such document, the other indicia of appointment are also absent. There is no evidence that Mr. Bevans was paid through the civil service system. Though Mr. Bevans was apparently administered an oath of office, there is no evidence that the person who administered the oath

was authorized to do so or to hire employees on behalf of the CIA. An appointment to the civil service can only be made by a person authorized to make the appointment. Finally, another indicia of federal employment, at the time, was that a federal employee's salary was not subject to Social Security withholding. The appellant's documents show that Social Security withholding was taken out of her husband's earnings from Air America.

I find, therefore, that the agency's decision to deny civil service credit for Mr. Bevans' service with Air America was proper. It is well established that an appointment is necessary for a person to hold a government position and be entitled to its benefits.

*Bevans*, slip op. at 6–7 (citation omitted).

## II

Section 8332 of Title 5 of the United States Code provides that service as an "employee" is creditable for the Act's purposes. 5 U.S.C. § 8332 (1988). The term "employee" is defined in 5 U.S.C. § 8331(1)(A) (1988) by reference to 5 U.S.C. § 2105(a) (1988), which in turn defines "employee" to mean an individual who, among other requirements, has been "appointed in the civil service by one of [listed employees] acting in an official capacity...."

This court twice has considered whether service with government proprietary corporations or units engaged in intelligence activities qualifies for civil service retirement credit.

*Horner v. Acosta*, 803 F.2d 687 (Fed.Cir. 1986), involved employment as "independent contractors" pursuant to employment contracts between individual employees and a naval unit and a naval proprietary corporation, both of which were engaged in intelligence activities. The Board ruled that service pursuant to such contracts was entitled to credit for civil service retirement purposes. This court reversed, holding that the employment contracts did not make the individuals "employees," because they had not been "appointed in the civil service." *Id.* at 693–94.

The court quoted with approval the statement in *Baker v. United States,* 614 F.2d 263, 268 (Ct.Cl.1980), that to qualify as an "employee" an individual must have "been appointed to that position by a person authorized to make the appointment." *Acosta,* 803 F.2d at 692. The court ruled that "definite, unconditional action by an authorized federal official designating an individual to a specific civil service position is necessary to fulfill the appointment requirement of 5 U.S.C. § 2105(a)." *Id.* at 693. The court noted the "absence of the usual indicia of civil service, such as an executed SF [Standard Form] 50 or 52 as an appointive document...." *Id.* at 694. (A Form 50 is a federal government personnel form used to record a personnel action, and a Form 52 is one used to initiate a federal personnel action.) The court concluded:

> In view of the Board's express finding that respondents were not appointed in the civil service when they were engaged to work in the unit, and the substantial evidence to support that finding and the Board's erroneous conclusion that contract service, without appointment, is creditable for [CSRA] purposes, we must reverse the Board's decision.

*Id.* at 696.

*Watts v. Office of Personnel Management,* 814 F.2d 1576 (Fed.Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 258, 98 L.Ed.2d 216 (1987), involved the employment of Watts as a pilot by various CIA proprietary companies, including Air America. This court affirmed the Board's determination that Watts' service with the CIA proprietary corporations did not qualify for retirement purposes because Watts had not been "appointed in the civil service." 814 F.2d at 1580. The court rejected, as involving an improper test that was rejected in *Acosta,* Watts' argument that "the circumstances as a whole indicate the intention to appoint Watts to the civil service." *Id.* The court then stated:

> Watts offers no other basis for finding "appointment" to the civil service. The undisputed facts of this case indicate that Watts never executed an SF 50 or 52 or any other standard form or document creating a nexus between him and the government, was never given an oath of office, and was not aware of the CIA's involvement until after his employment contract was executed. Acceptance is important, as membership in the civil service imports burdens as well as benefits. The cases mentioning standard forms and oaths of office do not necessarily exclude other rituals that may be devised to signalize an appointment from time to time. The essential prerequisites are an authorized appointing officer who takes an action that reveals his awareness he is making an appointment in the United States civil service, and action by the appointee denoting acceptance.

*Id.*

■ A. Under these standards defining the requirement that to qualify for civil service retirement benefits, an individual must have been "appointed in the civil service," the Board did not err in concluding that the petitioner had not shown that Bevans had been so appointed.

As noted, the court in *Acosta* referred to "an executed SF 50 or 52 as an appointive document" as one of "the usual indicia of civil service status." 803 F.2d at 694. There is nothing in the record to show that either Form 50 or Form 52 was executed for Bevans, and the petitioner makes no claim that it was. Although there are several executed personnel forms in the record that pertain to Bevans, all captioned "Request for Personnel Action," they are Air America forms, not those customarily used to make an appointment in the civil service.

The forms themselves have no indication that they are federal government forms. The spaces for signature list among the potential signers "President," and two of them were signed by that officer. The first line has space for listing the name of the individual for which action is requested "(IN ENGLISH)" and "(IN CHINESE)." As the petitioner's witness Mr. Merrigan, a former Air America attorney who dealt with personnel matters, explained, this was "an Air America form also called Request for Personnel Action. It's also copied, cer-

tainly not identical, but in many respects it's similar to the federal form. It was copied from it."

Moreover, there was no evidence that any of the officials with whom Bevans dealt in obtaining his position with Air America was authorized to make appointments in the civil service. The only authority those company officials appeared to have had was to appoint individuals to positions with their company. All the record shows is that Bevans was appointed to a legal position with Air America, and not to a position in the civil service. Indeed, the letter offering Bevans the position stated that it "constitutes the only authorized offer of employment to you from or on behalf of the Company."

As the court stated in *Watts*, one of the "essential prerequisites" of a civil service appointment is "an authorized appointing officer who takes an action that reveals his awareness he is making an appointment in the United States civil service." 814 F.2d at 1580. That requirement was not met here.

The fact that the individuals with whom Bevans dealt may have been CIA employees as well as Air America officials cannot be viewed, as the petitioner would treat it, as showing that they had authority to make appointments in the CIA or that Bevans received such an appointment by virtue of his appointment with Air America. Some officials of Air America were also CIA agents. Here, however, the record shows only that the Air America officials with whom Bevans dealt in arranging for his employment, including those who were both Air America officials and CIA employees, acted for Air America.

There is no evidence that in hiring Bevans as a lawyer those officials also gave him, or were authorized to give him, an appointment in the CIA. Indeed, Mr. Doole, who signed the letter offering Bevans the position with Air Asia, stated in a 1980 affidavit (given in connection with Jerry Fink's case) that from 1953 through 1971, as a CIA employee, he served as managing director and chief executive officer of Air America and Air Asia, and that

"[n]either my duties as a government employee nor the positions in the corporate structures identified above authorized me to hire or fire a federal employee."

A further indication that Bevans was not appointed in the civil service when Air America employed him is that during his service with that company no deductions were made from his salary for his contributions to the civil service retirement fund. Normally, amounts are deducted from a civil service employee's pay to cover such contributions, and those contributions are a source of the funds from which retirement annuities are paid. *Cf. Costner v. United States*, 665 F.2d 1016, 1023 (Ct.Cl.1981). The lack of such deductions is strong evidence that the employee did not have a civil service appointment.

Additional evidence supporting the Board's finding of non-appointment is that although social security taxes were not withheld from a civil service employee's salary during the time Bevans was employed by Air America, social security taxes sometimes were withheld from his salary.

■ B.  In one respect this is a stronger case for an appointment than *Watts*. One of the facts upon which the court relied in holding that Watts had not been "appointed in the civil service" was that he "was never given an oath of office." 814 F.2d at 1580. Here, however, the administrative judge found that Bevans "was apparently administered an oath of office." *Bevans*, slip op. at 7. Since the oath was not administered until the third day of Bevans' employment and only in response to his question about the relationship between Air America and another air carrier, Southern Airways, also apparently a CIA proprietary company, the government suggests that the oath was more likely one of secrecy rather than the oath that 5 U.S.C. § 3331 requires all civil service appointees to take. The Board, however, concluded that because the record did not show that Mr. Doole, the Air America officer (also a CIA employee) who administered the oath, was authorized by the CIA to administer oaths

to new CIA employees, the petitioner failed in her burden of proof.

We need not resolve the petitioner's contention that the government had the burden of proving that Doole lacked the authority he purported to exercise. For even if we assume Bevans was given the oath of office, the administration of an oath would not itself establish that Bevans was appointed in the civil service. The oath is insufficient to overcome the other evidence in the record, discussed above, that Bevans was not so appointed.

C. The petitioner also relied on certain facts following his employment by Air America that allegedly confirm that he received an appointment in the civil service.

1. The petitioner contends that Bevans' appointment in the civil service is supported by identification cards purportedly showing that Bevans was a federal employee. The record contains three such cards.

One card, issued by Air America, merely establishes that Bevans was an employee of that company, which is both undisputed and, as *Watts* indicates, irrelevant to his civil service status.

■ The second card was issued to Bevans in 1972 by the Department of Defense, and expired in 1975. It does not identify Bevans as a member of the appointed civil service. It merely indicates that the "Medical Care Facilities [to which Mr. Bevans was] Authorized" were "uniformed services" rather than "civilian."

■ The third card was issued by the American Embassy in Vientiane, Laos. Although the card states that "the person whose name and photograph appear hereon is employed by the United States government," it does not indicate that Bevans was a civil service employee. Not every person "employed by the United States government" has been appointed in the civil service, as *Acosta* shows. Furthermore, the record does not show when this card was issued to Bevans or that it was issued while he was an employee of Air America.

■ 2. The petitioner also contends that because "Mr. Bevans was fully aware of CIA's role before he was appointed,"

this is strong evidence that he was appointed in the civil service. She points out that one of the grounds for the court's conclusion in *Watts* that Watts had not been appointed in the civil service was that he "was not aware of the CIA's involvement until after his employment contract was executed." 814 F.2d at 1580.

The principal factual basis for this argument is the assumption that because Bevans practiced aviation law prior to working for Air America, he, like others in the field, must have been aware of the CIA's ownership and control of Air America. Mr. Merrigan testified that Bevans "would have been aware of" the corporation and the CIA relationship, that he "would have been told when he was being hired," and that he "may very well have" "known that the CIA owned Air America before he applied for this job." That speculative testimony does not require the conclusion that Bevans was aware of the CIA's relationship to Air America when he went to work for that company. Indeed, the argument is inconsistent with Bevans' inquiry, made on his third day of work, about the relationship between Air America and an affiliated company, which seemingly reflected his ignorance of the CIA's ownership of that company.

■ 3. The petitioner argues that Bevans' appointment in the civil service as a CIA employee is supported by the fact that while working for Air America he performed various services for the CIA. There is no indication in the record, however, that the CIA permitted only CIA employees to perform such services. Indeed, Mr. Doole pointed out that Mr. Jerry Finks, who was not a CIA employee, performed a number of significant tasks for the CIA. There is no reason to believe that the CIA would not utilize a trusted employee of one of its proprietary companies, who was not a CIA employee, to do work for it.

■ To a considerable extent, many of the petitioner's arguments in effect ask this court to substitute its judgment for that of the Board and to draw factual inferences from the record that the Board de-

clined to draw. Our function as a reviewing court, however, is not to engage in such *de novo* fact finding, but only to determine whether the Board's factual findings are supported by substantial evidence. For the reasons given, we hold that they are so supported.

■ D. The petitioner argues that even if the objective evidence does not establish that Bevans was appointed in the civil service, Bevans believed that he had been so appointed and therefore should be treated as having been so appointed. The record, however, does not establish that Bevans believed he had been appointed in the civil service.

The argument apparently is that since Bevans was aware that Air America was a CIA proprietary company, and since the officers with whom he dealt in obtaining employment were CIA employees, he necessarily believed that he received an appointment in the CIA when he was appointed as a lawyer with Air America. Not only does the argument lack evidentiary support for crucial elements, but it is a *non sequitur*. The fact that the CIA controlled Air America and that CIA employees may have hired Bevans, does not establish that Bevans, unlike the vast bulk of Air America employees, became a CIA employee when he was employed by Air America, or establish that Bevans believed he had been so appointed in the civil service.

■ E. Finally, the petitioner contends that even if Bevans was not appointed in the civil service, the government should be equitably estopped from making the contention. The argument rests on the factual assumption, which the record does not establish, that Bevans believed he had received such an appointment. Moreover, there is no evidence that the government misrepresented to Bevans or misled him into believing that he was a civil service employee, or that Bevans relied upon that belief to his detriment.

## CONCLUSION

The order of the Merit Systems Protection Board affirming the reconsideration decision of the Office of Personnel Management is AFFIRMED.