# Application of Conflict of Interest Rules to Appointees Who Have Not Begun Service

*Conflict of interest rules first apply when an appointee begins the duties of his office.*

May 8, 2002

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF GOVERNMENT ETHICS

You have asked for our opinion whether the principal conflict of interest rules of the Executive Branch apply to a person who has been appointed to an office by the President with the advice and consent of the Senate but has not yet begun the duties of that office.[1] We determine that the conflict of interest rules do not apply by virtue of the appointment alone but instead apply only after the appointee has begun the duties of his office.

## I.

The principal conflict of interest restrictions that govern the Executive Branch are found in the criminal conflict of interest laws, 18 U.S.C. §§ 202-209 (2000); the directives in Executive Order No. 12674, Principles of Ethical Conduct for Government Officers and Employees, 3 C.F.R. 215 (1989); and the Standards of Ethical Conduct for Employees of the Executive Branch, 5 C.F.R. pt. 2635 (2002) ("Standards of Ethical Conduct"). In each case, the reach of the restrictions depends on the meaning of the terms "officer" and "employee."

By their terms, the potentially relevant criminal statutes cover "officers" and "employees." For example, 18 U.S.C. § 203(a)(1)(B) forbids, among other things, a person's receipt of compensation for certain representational services rendered "at a time when such person is an officer or employee . . . in the executive . . . branch of the government." Under 18 U.S.C. § 205(a), "[w]hoever, being an officer or employee of the United States in the executive . . . branch of the Government" acts as an agent or attorney for anyone before an agency or court is guilty of a crime. And 18 U.S.C. § 209(a) bars receipt of a salary or supplement to a salary "as compensation for . . . services as an officer or employee of the executive branch of the United States Government."

Because title 18 sets out no definition of "officer" or "employee," we have looked to the definitions in title 5 as "'the most obvious source of a definition' for title 18 purposes." *Applicability of Executive Order No. 12674 to Personnel of*

---

[1] Letter for M. Edward Whelan III, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Marilyn L. Glynn, General Counsel, Office of Government Ethics (Jan. 8, 2002) ("OGE Letter"). We earlier gave informal advice reaching the same conclusion as in the present opinion.

*Regional Fishery Management Councils*, 17 Op. O.L.C. 150, 154 (1993) ("*Fishery Management Councils*") (quoting *Conflict of Interest—Status of an Informal Presidential Advisor as a "Special Government Employee,"* 1 Op. O.L.C. 20 (1977) ("*Informal Presidential Advisor*")). Under 5 U.S.C. § 2104 (2000), an "officer" is defined to mean someone who is (1) "required by law to be appointed in the civil service by [the President, a court of the United States, the head of an Executive agency, or the Secretary of a military department] acting in an official capacity," (2) "engaged in the performance of a Federal function under authority of law or an Executive act," *and* (3) "subject to the supervision" of the President or the head of an Executive agency or military department. Section 2105 defines "employee" to include not only an "officer," but also anyone in a larger class of persons who, like "officers," are engaged in federal functions, but are appointed and supervised by specified federal officials other than those able to appoint and supervise "officers."

The Executive Order similarly imposes certain restrictions on "employees," defined to mean "any officer[s] or employee[s] of an agency." Exec. Order No. 12674, § 503(b). Although the Executive Order does not define "officer" or "employee," we previously have concluded that the terms "are identical in scope and meaning with the terms 'officer' and 'employee' as used in 5 U.S.C. §§ 2104 and 2105." *Fishery Management Councils*, 17 Op. O.L.C. at 153. We rested this conclusion on three grounds. First, we noted that we had turned to the title 5 definitions for guidance in interpreting the criminal conflict of interest laws, and "[b]ecause the objectives of the Order and its implementing regulations are closely related to those of the conflicts statutes, we [thought] it reasonable to look to title 5's definition of 'employee' when elucidating the Order." *Id*. at 154 (citation omitted). Second, the Executive Order adopts the definition of "agency" from title 5, with certain exceptions, Exec. Order No. 12674, § 503(c); and "[w]e [thought] it unlikely that the Order was intended to cover personnel who were employed by 'agencies' within the meaning of title 5 but who were not themselves 'employees' within the same title." 17 Op. O.L.C. at 154. Third, while the Executive Order states generally that it is based on the authority vested in the President "by the Constitution and laws of the United States," Exec. Order No. 12674, pmbl., but does not specify the authorizing statutes, "the most obvious statutory source of authority" is the President's power under title 5 to "prescribe regulations for the conduct of employees in the executive branch," 5 U.S.C. § 7301 (2000), and this authority brings into play the definition of "employee" in title 5. 17 Op. O.L.C. at 154.

The Standards of Ethical Conduct carry out the Executive Order, and we therefore applied our conclusion in *Fishery Management Councils* about the applicable definitions both to the Executive Order and to these implementing regulations. 17 Op. O.L.C. at 150 n.2, 158. In addition, we note that some of the particular rules in the Standards of Ethical Conduct rest on specific statutory provisions in title 5 that

use the term "employee" and so invoke the title 5 definition. The rules about gifts to superiors, for example, derive in part from 5 U.S.C. § 7351 (2000), which bars "[a]n employee" from receiving or making certain gifts.[2] The reach of the Standards of Ethical Conduct thus depends, too, on the meaning of the terms "officer" and "employee" in title 5.

## II.

### A.

The OGE Letter argues that the three parts of the title 5 definitions—appointment by a federal official, engagement in a federal function, and federal government supervision—need not "be applied invariably or formalistically in every case where the application of federal ethics requirements is at issue." OGE Letter, *supra* note 1, at 2. In particular, the OGE Letter cites two opinions of our Office—one in which we quoted a previous opinion for the proposition that the title 5 definition of employee "is not necessarily conclusive for conflicts purposes," *Fishery Management Councils*, 17 Op. O.L.C. at 154 n.12, and one in which we concluded that "an identifiable act of appointment may not be absolutely essential for an individual to be regarded as an officer or employee in a particular case where the parties omitted it for the purpose of avoiding the application of the conflict-of-interest laws or perhaps where there was a firm mutual understanding that a relatively formal relationship existed," *Informal Presidential Advisor*, 1 Op. O.L.C. at 21. Therefore, the OGE Letter argues, satisfaction of only the first part of the title 5 definitions—appointment by a federal official—ought to suffice to render an individual subject to the federal conflict of interest laws.

We do not agree. First, as stated above, we have previously opined that the terms "officer[s]" and "employee[s]" in the Executive Order and the Standards of Ethical Conduct "are identical in scope and meaning with the terms 'officer' and 'employee' as used in 5 U.S.C. §§ 2104 and 2105." *Fishery Management Councils*, 17 Op. O.L.C. at 153. We have, in short, concluded that the three parts of the title 5 definitions must be applied invariably in these contexts. Second, with respect to the criminal conflict of interest laws, we do not read our opinions as suggesting any general flexibility to depart from the three-part test, much less to simply disregard two of the three parts. Indeed, particularly in view of the rule of lenity, *see Jones v. United States*, 529 U.S. 848, 858 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971), and *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-222 (1952)), we would be loath to dilute the

---

[2] The statutory provision that underlies the rules on gifts from outsiders, 5 U.S.C. § 7353 (2000), has its own definition of "officer or employee"—"an individual holding an appointive or elective position in the executive, legislative, or judicial branch of Government, other than a Member of Congress." *Id.* § 7353(d)(2). This definition, however, is congruent with the analysis we set out below.

three-part test. In this regard, our statement that the title 5 definition of employee "is not necessarily conclusive for conflicts purposes" might more sensibly be read to mean that, in some circumstances, even satisfaction of the three-part test might not conclusively establish that a person is an officer or employee for purposes of the criminal prohibitions. We further note that our conclusion that "an *identifiable act* of appointment may not be absolutely essential for an individual to be regarded as an officer or employee," *Informal Presidential Advisor*, 1 Op. O.L.C. at 21 (emphasis added), does not mean that we concluded that the *requirement* of appointment by a federal official was not necessary. On the contrary, it presupposes the requirement and merely leaves open the possibility that an individual could be shown to have satisfied the requirement—i.e., to have been appointed—even in the absence of an identifiable act of appointment, if a "formal relationship" had been established between the individual and the government. *Id*.

We therefore look to the statutory definitions of "officer" and "employee" in title 5 in deciding whether the conflict of interest restrictions apply to a person who has been appointed to office by the President with the Senate's advice and consent but has not yet begun the duties of office. We conclude that a person in these circumstances would not meet at least two of the three statutory tests—engagement in a federal function and federal government supervision—and that the conflict of interest restrictions therefore would not apply to him.

Chief Justice Marshall explained in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162 (1803), that "when a commission has been signed by the president, the appointment is made." In the circumstances here, an appointment in the constitutional sense would thus be complete. Whether the signing of a commission would constitute an "appointment" for purposes of 5 U.S.C. §§ 2104 and 2105 may be less clear. The United States Court of Appeals for the Federal Circuit has held, for example, that appointment under the statute requires "action by the appointee denoting acceptance" and that "[a]cceptance is important, as membership in the civil service imports burdens as well as benefits." *Watts v. OPM*, 814 F.2d 1576, 1580 (Fed. Cir. 1987). We need not resolve this issue here, however; we instead assume *arguendo* that the first part of the test would be met when the President signed the commission.

Nevertheless, status as an employee under 5 U.S.C. § 2105 (2000) or an officer under 5 U.S.C. § 2104 requires more than an appointment: "One may be an appointee and never achieve the status of employee. There are three elements to the statute and all must be complied with to achieve the status of an employee." *McCarley v. MSPB*, 757 F.2d 278, 280 (Fed. Cir. 1985).[3] In *McCarley*, the

---

[3] On the question whether the Merit Systems Protection Board or the agency taking the underlying action should be the respondent, which is not at issue here, *McCarley* was overruled by *Hagmeyer v. Dep't of Treasury*, 852 F.2d 531 (Fed. Cir. 1988). Congress then amended the statute to clarify this question. *See Amin v. MSPB*, 951 F.2d 1247, 1251-54 (Fed. Cir. 1991).

petitioner had been appointed, but had not entered upon the duties of the position. The Merit Systems Protection Board dismissed his claim for lack of jurisdiction, because jurisdiction depended upon his being an employee. The Federal Circuit affirmed, explaining that relief is unavailable "to an appointee who has not qualified as an employee by performing a federal function subject to the supervision of a federal employee." *Id*.; *see also Miller v. MSPB*, 794 F.2d 660 (Fed. Cir. 1986).

Your question concerns appointees, like the petitioner in *McCarley*, who have not entered upon the duties of their offices and have therefore not yet performed a federal function, under the supervision of a federal official. Under 5 U.S.C. §§ 2104 and 2105, they are not yet officers or employees and thus are not yet subject to conflict of interest restrictions.

The reasoning by which we conclude that the conflict of interest restrictions do not become applicable upon appointment, without more, is not novel. In *Marbury*, Chief Justice Marshall carefully distinguished between the President's act of appointment and the appointed officer's subsequent acceptance of that appointment: "The appointment is the sole act of the president; the acceptance is the sole act of the officer, and is, in plain common sense, posterior to the appointment. As he may resign, so may he refuse to accept." 5 U.S. at 161; *see id*. at 162 ("the person appointed . . . has the absolute, unconditional power of accepting or rejecting [the appointment]"). Thus, it is plain under *Marbury* that the act of appointment does not *ipso facto* make the appointed person an officer or employee. *See also Acceptance of a Promotion*, 12 Op. Att'y Gen. 229, 229 (1867) ("a person cannot be made an incumbent without his consent, and, of course, this he must manifest by some adequate token of his intention"; "a formal acceptance is the evidence which, in the public service generally, it has been customary to require").

Assistant Attorney General William H. Rehnquist used parallel reasoning when he concluded that a United States Attorney would not become subject to a particular rule grounded in conflict of interest principles, where that person had been appointed as a federal judge but had not yet taken the oath of judicial office or begun his judicial duties. *See* Memorandum for Harlington Wood, Jr., Associate Deputy Attorney General, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Delay in Induction of Judge into Office Following His Confirmation by the Senate* (Nov. 27, 1970) ("Rehnquist Opinion"). According to the Rehnquist Opinion, "the offices of judge and of prosecutor in the same court are incompatible": it would be "improper as a matter of public policy if the same person carried out their functions," with the "impropriety deriv[ing] from such considerations as conflicts of interest or the rule that no person shall be a judge in his own cause." *Id*. at 5. The appointee in question wished to complete a criminal prosecution before becoming a judge, but the President had already signed his commission and sent it to him. Because "the assumption by an officer

of a new office which is incompatible with the one he is holding has the effect of vacating the first office," *id*. (citation omitted), the issue was "whether a federal official vacates his office at the time when the President executes and forwards a commission appointing him to an office incompatible with the one which the officer is holding, or whether the *vacation* of the office takes place at a later date, *e.g*., when the officer accepts it, or enters upon duty." *Id*. The Rehnquist Opinion concluded that although the appointment is made with the signing of the commission, that signing "is not the last step in the investiture of an officer," *id*. at 6, and "an appointment must be accepted in order to have [the] effect" of vacating an office already held, *id*. at 7. As the Rehnquist Opinion explained, "[t]he rule that an incumbent vacates his office only upon acceptance and exercise of an incompatible office, rather than upon appointment to it, is obviously designed to prevent the appointing power from removing an inconvenient officeholder or even a member of the legislature by appointing him to an incompatible office." *Id*. at 8.

## B.

The OGE Letter also argues that "the underlying purposes of the ethical requirements are better served by the view that officer or employee status commences with a personnel appointment." OGE Letter at 2. For example, an appointee might defer his first day of work in order to represent a client before the agency to which he had already been appointed. *Id*. We do not dispute that the rule that conflict of interest restrictions do not apply immediately upon appointment may indeed open the possibility of some abuses. We note, however, that such a rule also enables an appointee to wind up his private affairs in an orderly manner (presumably in consultation with the Administration) and therefore may be critical to recruiting qualified appointees in the first place. Moreover, in the event of any real abuse, the President could remove the appointee from the office to which he had been appointed, even before he began work.

The position advocated in the OGE Letter invites its own set of abuses. If a person were to be subject to conflict of interest restrictions merely upon appointment, the appointing authority "might prejudice the appointee," Rehnquist Opinion at 7, and even subject him to the threat of criminal liability, by appointing him to an office he did not want and would not undertake. Even in the case of voluntary office-seekers, while it would be highly unusual for an appointee, having undertaken the rigors of the appointment process, to refuse his office, such a decision is far from implausible. Our files reveal, for example, that in 1971 a presidential appointee decided not to serve after the President signed his commission, because he recently had been elected to Congress. *See* Memorandum for the Honorable Daniel Kingsley, Special Assistant to the President, from Thomas E. Kauper, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Effect of Appointment as a Member of the Air Quality Advisory Board* (June 3, 1971).

A similar decision might be made by someone appointed at the time of a presidential election lost by the incumbent's party.

On balance, were we to decide which rule better promoted the underlying purposes of the conflict of interest rules, we doubt very much that we would adopt the rule advocated by the OGE Letter. But, for the reasons stated above, the choice is not ours to make.

## C.

The OGE Letter further states that "[o]ver the years [OGE has] advised numerous agencies, White House officials, and nominees for Senate-confirmed (PAS) positions that an individual becomes subject to the various ethical requirements upon appointment." OGE Letter at 1. We note that it appears that OGE has not always had this view. In 1984, we issued an opinion concluding that a statutory bar against outside employment by commissioners of the International Trade Commission applied as of the commencement of duties, rather than as of appointment. Memorandum for Fred F. Fielding, Counsel to the President, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of New Members to the International Trade Commission* (Mar. 22, 1984) ("ITC Opinion"). In the course of this opinion, we noted that "OGE has indicated that as a general matter, it does not apply similar ethical and conflict of interest standards to employees until the time when they actually begin their employment and receive federal pay." *Id*. at 10. Although our opinion may require a departure from OGE's more recent practice, we are persuaded that OGE's earlier view of the matter was the better one.

## D.

Finally, the OGE Letter expresses concerns about practical application of our conclusion. For example, the letter asks whether an officer starts work when he takes the oath of office or performs some official action.[4] We believe that a Senate-confirmed official becomes an "officer" in the relevant sense when, upon or after accepting his appointment, he actually begins his duties. At that point, the appointee is performing a federal function, under the supervision of the President or the agency head. To meet this test, it is not necessary that he take any particular "official action" in his position. It suffices that he has begun the work of that office.[5]

---

[4] In an analogous situation involving a judicial office, the Rehnquist Opinion found it unnecessary to choose between "the time when [the appointee] takes the . . . oath, or when he actually begins to exercise his . . . office." Rehnquist Opinion at 8.

[5] If the official is a "special government employee" under 18 U.S.C. § 202(a) because he is expected to work no more than 130 days in the next year, the first day that, under usual principles,

The question when an official begins the duties of his office is a familiar one that must, irrespective of the conflict of interest prohibitions, be addressed and answered for each official. Specifically, an official is entitled to the salary of his office at the time he enters upon the duties of office, *see* ITC Opinion at 9-10; *Interstate Commerce Commission*, 19 Op. Att'y Gen. 47, 48 (1887), not at the time of appointment or at the time of the oath of office, *see United States v. Flanders*, 112 U.S. 88, 91 (1884); *Leave for Transferred Employee*, 39 Op. Att'y Gen. 304, 305-06 (1939) (Jackson, Acting A.G.). A determination of the time when the conflict of interest rules begin to apply is identical to, and should therefore be no more difficult to make than, the routine determination of the time when the official begins to accrue his salary.

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

counts toward the 130-day limit should be considered the day on which he enters upon his duties. *See* Office of Government Ethics, *Summary of Ethical Requirements Applicable to Special Government Employees*, Informal Advisory Op. 00x1, at 5-6 (Feb. 15, 2000), *available at* http://www.oge.gov/ OGE-Advisories/Legal-Advisories/Legal-Advisories/ (last visited July 12, 2012). The OGE Letter asks whether a special government employee who is reappointed would be subject to conflict of interest restrictions during the period after reappointment but before the next day on which he actually works. This question seems to concern special government employees who are not appointed by the President with the advice and consent of the Senate but are reappointed annually, either by the President or by another officer. OGE Letter at 3. We believe that the reappointments of such employees do not place them in the same position as the Senate-confirmed appointees we address in this opinion. In many instances, as a matter of practice, special government employees are employed continuously, and the successive one-year appointments are primarily a means of enabling the appointing officer to assess whether the work anticipated in the next year will exceed 130 days and require an end to the designation as a special, rather than ordinary, government employee. *See* Office of Government Ethics, *Special Government Employees and 18 U.S.C. §§ 202, 203, and 205*, Informal Advisory Op. 81x24, at 2-3 (July 23, 1981), *available at* http://www.oge.gov/OGE-Advisories/Legal-Advisories/Legal-Advisories/ (last visited July 12, 2012). We believe that the conflict of interest restrictions would apply continuously to a special government employee, until he resigns or the agency notifies him that he has not been reappointed.