NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

2006-3200

RAMON L. BERNABE

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:   October 4, 2006

_____

Before MAYER, GAJARSA, and LINN, Circuit Judges.

PER CURIAM.

## DECISION

Ramon Bernabe ("Mr. Bernabe") petitions this court for review of the January 27, 2006 final decision of the Merit Systems Protection Board ("Board"), which affirmed the Office of Personnel Management's ("OPM's") denial of Mr. Bernabe's application for a retirement annuity.  See Bernabe v. Office of Pers. Mgmt., SF-0831-05-0643-I-1 (M.S.P.B. Jan. 27, 2006) ("Final Order"), aff'g Bernabe v. Office of Pers. Mgmt., SF-0831-05-0643-I-1 (M.S.P.B. Sept. 15, 2004) ("Initial Decision").  Because the Board's decision is not arbitrary, capricious, or an abuse of discretion, is supported by

substantial evidence and is otherwise in accordance with the law, we affirm the Board's decision.

BACKGROUND

Mr. Bernabe served as a stevedore in Guam from March 18, 1950 to February 15, 1955. Initial Decision, slip op. at 3. On April 20, 1989, Mr. Bernabe wrote to the OPM, requesting "the honor to apply for Civil Service DEFERRED RETIREMENT with separation on or before 1956-1958." Id. (internal quotations omitted). The agency subsequently denied his request for a deferred annuity pursuant to the Civil Service Retirement Act ("CSRA"), and Mr. Bernabe requested reconsideration, which OPM denied. Id., slip op. at 3-4.

Mr. Bernabe appealed to the Merit Systems Protection Board, where the administrative judge ("AJ") started by noting that an applicant for retirement annuity benefits bears the burden of proving, by a preponderance of the evidence, entitlement to the benefits sought. See Id., slip op. at 2 (citing 5 C.F.R. § 1201.56(a)(2)); De Laet v. Office of Pers. Mgmt., 70 M.S.P.R. 390 (1996). The AJ explained that to be eligible for an annuity, an applicant must, inter alia, have been employed in Government service in a covered position for at least five years.

> Two types of Federal service are pertinent to a determination of whether an individual is entitled to a retirement annuity under the Civil Service Retirement Act (CSRA) – "creditable service" and "covered service." Covered service is more limited in scope, referring to Federal employees who are "subject to" the CSRA, i.e., employees who must deposit part of their basic pay into the Civil Service Retirement and Disability Fund. To qualify for a civil service retirement annuity, an employee must complete at least five years of creditable civilian service, and must have served at least one of her last two years of Federal service in a covered position. 5 U.S.C. § 8333(a)-(b).

Noveloso v. Office of Pers. Mgmt., 45 M.S.P.R. 321 (1990).

In the instant case, the AJ ruled that Mr. Bernabe had failed to establish that he was a federal employee within the meaning of the Retirement Act, because he had failed to meet the requirements for credited employment—namely formal appointment to the post—let alone those for covered employment. Here, the AJ cited our decision in Watts, which explained the scheme as follows:

> The provisions of 5 U.S.C. § 8332 establish that service as an "employee" is creditable for civil service purposes. The term "employee" by cross reference is defined in 5 U.S.C. § 2105(a) as follows:
> (a) For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is --
> (1) appointed in the civil service by one of the following acting in an official capacity -- . . .
> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
> (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

Watts v. Office of Pers. Mgmt., 814 F.2d 1576, 1579 (Fed. Cir. 1987).

The AJ confronted the fundamental problem with Mr. Bernabe's case, namely that he had failed to meet his evidentiary burden to prove that he had performed work in a covered position. In fact, the AJ concluded that "[t]here is no evidence that the appellant was ever appointed to a position in the Federal service by an authorized Federal official." Initial Decision, slip op. at 5.

The AJ examined the documents and other evidence submitted by Mr. Bernabe, but concluded that the "appellant has failed to carry his burden of proving entitlement to the benefit he seeks." Id., slip op. at 6. For example, the AJ explained that Mr. Bernabe's Civil Service Retirement card was merely evidence of the fact that he had applied for benefits and that the two letters of recommendation written by government

employees failed to establish that he had worked in those jobs in a <u>covered</u> position. Moreover, the AJ dismissed statements of two Navy officials, written on Navy letterhead, attesting to Mr. Bernabe's service from March 18, 1950 to February 15, 1955. Respondent's Br. App. at 14-15. The AJ concluded that these statements "merely state that the appellant was employed by the . . . Naval Supply Depot . . . [and] are insufficient to establish that the appellant was ever a covered employee." <u>Initial Decision</u>, slip op. at 5.

In his petition for review before the MSPB, Mr. Bernabe explained that "[a]lthough I was recruited by Luzon Stevedoring Company to work in Guam, the company was acting only as intermediary or agent of the US Navy." Respondent's Br. App. at 28. He further stated that he "worked under the direct control and supervision of the US Navy Officials . . . ." <u>Id.</u> Mr. Bernabe's wages, however, were paid by the Stevedoring Company, <u>see</u> Respondent's Br. App. at 18, although the funds appear to have ultimately come from the government.

On appeal to this court, Mr. Bernabe argues that the Board failed to take into account evidence in support of his contention that he had performed in a covered position and was therefore entitled to the annuity he sought. Specifically, he asserts that the Board ignored the certification of Donal Leibrandt "that [his] services extended from May 10, 1953 to December 28, 1955 as Store Aide II, supplementing [his] services as checker from March 18, 1950 to February 15, 1955, as certified by Ranny Tai . . . ." Pet. Brief. at 1.

<u>DISCUSSION</u>

We must affirm an MSPB decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3) (1994); <u>accord</u> <u>Phillips v. U.S. Postal Serv.</u>, 695 F.2d 1389, 1390 (Fed. Cir. 1982) (holding that our consideration of cases where timeliness is an issue is "limited to whether the board's decision not to waive the regulatory time limit was arbitrary, an abuse of discretion, or otherwise not in accordance with law"). A decision is supported by substantial evidence when "a reasonable mind might accept [it] as adequate to support a conclusion." <u>Matsushita Elec. Indus. Co. v. United States</u>, 750 F.2d 927, 933 (Fed. Cir. 1984) (internal quotations omitted).

As an initial matter, it should be noted that when the Board denied Mr. Sapien's petition for review of the AJ's initial decision in this case, the initial decision became the final decision of the Board. <u>See</u> 5 C.F.R. § 1201.113(b). We turn, therefore, to the substance of the initial decision. Because the Board's factual determination that Mr. Bernabe was not a covered employee is supported by substantial evidence, it applied the correct law, and its decision was neither arbitrary nor capricious, we must affirm the judgment of the Board.

First, the Board applied the correct law. The decision of the AJ appropriately turned on whether Mr. Bernabe was an appointed employee. <u>See, e.g.</u>, <u>Bevans v. Office of Pers. Mgmt.</u>, 900 F.2d 1558, 1561 (Fed. Cir. 1990) ("Section 8332 of Title 5 of the United States Code provides that service as an 'employee' is creditable for the Act's

purposes. 5 U.S.C. § 8332 (1988). The term 'employee' is defined in 5 U.S.C. § 8331(1)(A) (1988) by reference to 5 U.S.C. § 2105(a) (1988), which in turn defines 'employee' to mean an individual who, among other requirements, has been 'appointed in the civil service by one of [listed employees] acting in an official capacity. . . .'" (citations omitted)); Horner v. Acosta, 803 F.2d 687, 692 (Fed. Cir. 1986) ("[A]n appointment is necessary for a person to hold a government position and be entitled to its benefits.") (citations omitted)).

Moreover, our case law holds that "the requirement that the 'employee' be 'appointed' excludes one whose services are retained merely by contract." Watts v. Office of Pers. Mgmt., 814 F.2d 1576, 1578 (Fed. Cir. 1987). Our case law supports the factors used by the AJ in making his determination. For example, in Watts we noted the relevance of standard forms of appointment:

> Watts offers no other basis for finding "appointment" to the civil service. The undisputed facts of this case indicate that Watts never executed an SF 50 or 52 or any other standard form or document creating a nexus between him and the government, was never given an oath of office, and was not aware of the CIA's involvement until after his employment contract was executed. Acceptance is important, as membership in the civil service imports burdens as well as benefits. The cases mentioning standard forms and oaths of office do not necessarily exclude other rituals that may be devised to signalize an appointment from time to time. The essential prerequisites are an authorized appointing officer who takes an action that reveals his awareness he is making an appointment in the United States civil service, and action by the appointee denoting acceptance.

(quoted in Bevans v. Office of Pers. Mgmt., 900 F.2d at 1562.)

Similarly, the Board properly considered the absence of retirement deductions from Mr. Bernabe's pay. See Rosete v. Office of Pers. Mgmt., 48 F.3d 514, 516 (Fed. Cir. 1995) ("[E]vidence that Covered service only includes an appointment that is

subject to the CSRA and for which an employee must deposit part of his or her pay into the Civil Service Retirement and Disability Fund." (citing Noveloso v. Office of Pers. Mgmt., 45 M.S.P.R. at 323)).

Mr. Bernabe's argument that he was the functional equivalent of a federal employee and was supervised by Navy personnel must also fail as a matter of law. First, the satisfaction of the "supervision" requirement does nothing to satisfy the entirely independent "appointment" requirement. Second, as we explained in Horner v. Acosta, 803 F.2d at 693, "the 'totality of the circumstances' approach cannot be used to satisfy the statutory requirement," because "'an abundance of federal function and supervision will not make up for the lack of an appointment.'" (quoting Costner v. United States, 665 F.2d 1016, 1020 (Ct. Cl. 1981)). In Horner, we further explained that because "contract service, without appointment, is creditable for CSRA purposes, we must reverse the Board's decision." 803 F.2d at 696. See also Bevans v. Office of Pers. Mgmt., 900 F.2d at 1561 ("[E]mployment contracts did not make the individuals 'employees,' because they had not been 'appointed in the civil service.'") (citations omitted).

Second, the Board properly considered the pertinent factors in its determination that Mr. Bernabe failed to meet the requisite burden of proof, and substantial evidence supports its decision to affirm the agency's denial of the annuity. In addition to the factors mentioned above, the Board also considered that it was unable to find any government records of Mr. Bernabe's federal employment.

We recognize that Mr. Bernabe had introduced letters from Navy officials stating that he was employed by the Waterfront Branch of the Naval Supply Depot. Our job is

not to weigh the evidence in the first instance, however, but to review the decision of the Board for support by "substantial evidence." The AJ stated, in this regard, that "[i]n light of the [other] considerations above, these letters are insufficient to establish that the appellant was ever a covered Federal employee." Initial Decision, slip op. at 5.

We agree with Mr. Bernabe that the language of the AJ seems, at first blush, to be dismissive. The AJ wrote: "With regard to the letters of recommendation from the Cargo Officer In-Charge and the Ship Loading Specialist, these letters merely stated that the appellant was employed by the Waterfront Branch of the Naval Supply Depot." Indeed, employment by the federal government is precisely the issue at the heart of the AJ's decision. Mr. Bernabe argues that "[t]he word employed presupposes that I was appointed by authorized Federal Officials." Pet. Informal Br., response to question 2, para 3.

However, other language in the opinion and in the record informs the meaning of the AJ's discussion of the evidentiary significance of the letters stating that he was employed by the Navy. In short, the AJ determined that these letters were evidence merely of employment, and did not speak to whether there had been the requisite formal appointment. First, the AJ states that these letters (establishing employment by the Navy Depot) are insufficient "[i]n light of considerations (1) through (5) above." These considerations concern "evidence that the appellant was ever appointed to a position in the federal service by an authorized Federal official." Initial Decision, slip op. at 5 (emphasis added). Indeed, it is possible to be employed "by" the Navy in the colloquial sense of the word, and yet not be appointed to a federal position, as is required for civil service retirement benefits. In Horner, 803 F.2d at 692, for example,

we explained that:

> [r]espondents [took] the position that the decision to 'hire' them by an authorized official constituted an 'act of appointment' and that the documentation was 'window dressing.' They also contend[ed] that law does not establish the type of appointive act which must be performed, [and] that a contract is a sufficient appointive document for this purpose, and that the Navy had authority to obtain their services by contract.

In rejecting the respondents' argument, we observed that there is a "significant degree of formality in the appointment process." Id. We concluded, moreover, that "[n]either the act of the commanding officer in authorizing the engagement of their services nor the execution of agreements by the parties, whether taken separately or together, are sufficiently definitive and unequivocal to constitute an act of appointment to a civil service position." Id. at 694 (footnotes omitted). Consequently, it is clear that what the AJ meant in discounting the significance of the letters is that they attested merely to "employment" and not to whether an "appointment" had occurred.

Moreover, at page 4, immediately after discussing the letters, the AJ writes that "In the appellant's request for CSRS benefits dated April 29, 1989, the appellant indicates that he worked for Luzon Stevedoring . . . ." Also in the record, however, though not stated in the opinion, was Mr. Bernabe's statement in his petition for review by the Board that "[a]lthough I was recruited by Luzon Stevedoring Company to work in Guam, the company was acting only as an intermediary or agent of the U.S. Navy." Mr. Bernabe's own statement clarifies the relation between him and the Navy. He was, by his own admission, not appointed to a position as a federal employee, but rather was the employee of a government contractor.

Further there is no evidence of arbitrary or capricious conduct. Accordingly, and for the reasons stated above, we affirm the decision of the Board.