NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**THOMAS MCLEAN,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2024-1812

---

Petition for review of the Merit Systems Protection Board in No. DE-1221-22-0142-W-2.

---

Decided:  November 19, 2024

---

THOMAS R. MCLEAN, Shawnee, KS, pro se.

STEPHEN J. SMITH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before CHEN, BRYSON, and STOLL, *Circuit Judges*.

PER CURIAM.

Dr. Thomas McLean appeals pro se a final decision of the Merit Systems Protection Board (Board) denying his request for corrective action under the Whistleblower Protection Act of 1989 (WPA), as amended by the Whistleblower Protection Enhancement Act of 2012 (WPEA). *See McLean v. Dep't of Veterans Affs.*, No. DE-1221-22-0142-W-2, 2024 WL 2784976 (M.S.P.B. Apr. 26, 2024) (Appx. 1–35)[1] (*Decision*).[2] Although the Board found that Dr. McLean proved a prima facie case of whistleblower reprisal by his suspension and termination by the Department of Veterans Affairs (VA), the Board denied relief because it found that the VA met its burden to show it would have taken the same personnel actions even in the absence of Dr. McLean's protected activity. We *affirm*.

## BACKGROUND

Dr. McLean worked as a surgeon at the VA's Dwight D. Eisenhower Medical Center in Kansas. In August 2010, Dr. McLean filed with the Office of Special Counsel (OSC) a whistleblower complaint alleging that he was obstructed from applying for a promotion to the Surgical Service Line Manager position, which was instead filled by a colleague, Dr. Van Landingham.

While his OSC complaint was pending, Dr. McLean began to engage in troubling operating room (OR) conduct. During an appendectomy in December 2010, Dr. McLean carelessly passed sharp surgical instruments, made inappropriate comments to a nurse, and, out of frustration, left the OR for 10–20 minutes while the patient remained

---

[1] "Appx." refers to the appendix filed with Dr. McLean's informal opening brief.

[2] Because the electronic version of the decision lacks page designations, we employ the pagination used in the decision at Appx. 1–35.

under general anesthesia with an open surgical wound.  In a separate incident in January 2011, Dr. McLean did not give his nurses sufficient time to count surgical instruments during a procedure.  Shortly thereafter, OSC closed its inquiry into Dr. McLean's complaint.

In February 2011, the VA appointed an Administrative Investigation Board (AIB), consisting of two "outside medical experts," to investigate concerns regarding Dr. McLean's behavior and competency. *Decision* at 2 n.4, 4.  After reviewing medical records and witness statements, including formal testimony under oath, the AIB issued a report in April 2011 that found "substantial evidence of inappropriate and disruptive conduct" by Dr. McLean in the OR; "widespread concern" among surgery staff "regarding Dr. McLean's behavior and competence in the OR"; and behavior by Dr. McLean that was often perceived as intimidating, thus "undermin[ing] a culture of safety in the OR."  *Id.* at 4, 6–7 (citations omitted).  Consequently, the AIB recommended that Dr. McLean be placed into a Focused Professional Practice Evaluation (FPPE).  The FPPE proposed for Dr. McLean would involve 54 cases performed by Dr. McLean over six months, with each case observed by one of two proctoring surgeons, namely, Dr. Montecino or, as a backup, Dr. Van Landingham.  On August 12, 2011, the VA approved the FPPE, which commenced several days later.  The FPPE was eventually extended for an additional six months.

In March 2012, while the FPPE was ongoing, Dr. McLean testified on behalf of a colleague, Dr. Malik, in a separate AIB investigation (Malik AIB testimony).  In his testimony, Dr. McLean criticized Drs. Montecino and Van Landingham, alleging that they engaged in unprofessional behavior and committed various medical errors.

In May 2012, Drs. Montecino and Van Landingham recommended closing Dr. McLean's FPPE early.  They reported that Dr. McLean's surgical technique fell so far

below the standard of care that each of Drs. Montecino and Van Landingham needed to intervene in his procedures on several occasions, placing themselves and the patients at "undue risk." *Id.* at 11–12 (citation omitted). They opined that Dr. McLean should no longer be permitted to practice general surgery independently or supervise residents. The Professional Standards Board (PSB) unanimously agreed, and Dr. McLean's operating privileges were suspended.

The VA proposed removal of Dr. McLean in January 2014 on a charge of "failure to demonstrate appropriate surgical skills," supported by 22 specifications of substandard medical treatment. *Id.* at 13 (citation omitted). The deciding official, Dr. Klopfer, sustained the removal due to the "gravity" of Dr. McLean's prolonged misconduct.[3] *Id.* at 13–14. Dr. McLean appealed the decision to a Disciplinary Appeals Board (DAB), which unanimously sustained the charge and the penalty, and noted that it felt "very strongly" that Dr. McLean should not be permitted to practice general surgery due to his "outdated techniques and thinking" and OR performance that fell "below the community standard." Appx. 2022, 2026–27.

Dr. McLean subsequently filed an individual right of action (IRA) appeal with the Board. In an initial decision, the administrative judge found that Dr. McLean engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) by making his August 2010 complaint to the OSC, and under 5 U.S.C. § 2302(b)(9)(B) by providing the Malik AIB

---

[3] Dr. McLean's removal was first proposed in October 2012 and sustained by Dr. Klopfer in February 2013, based on the same charge and supporting specifications. Dr. Klopfer rescinded this initial removal in August 2013 due to a procedural concern regarding Dr. McLean's access to the materials relied upon for that removal decision.

testimony.[4] *Decision* at 18–19. The administrative judge also found that both protected activities were contributing factors in the VA's 2012 suspension and 2014 removal of Dr. McLean.[5] *Id.* at 21–22. But the administrative judge denied corrective action after analyzing the factors enumerated in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), finding that the VA proved by clear and convincing evidence that it would have taken the same action notwithstanding the protected activities. *Decision* at 22–29. Finally, the administrative judge found that Dr. McLean failed to establish an additional alleged personnel action, namely, that the VA restricted him from

---

[4]     Effective December 27, 2012, the WPEA "expanded [the Board's] jurisdiction to cover IRA appeals alleging that an agency engaged in [certain] prohibited personnel practices described in 5 U.S.C. § 2302(b)(9)," in addition to those described in 5 U.S.C. § 2302(b)(8). *Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1319–21 (Fed. Cir. 2016); *see* WPEA, Pub. L. No. 112-199, §§ 101(b)(1), 202, 126 Stat. 1465, 1476. We have previously held that "section 101(b)(1) of the WPEA cannot be applied retroactively to supply a predicate for the exercise of jurisdiction." *Hicks*, 819 F.3d at 1322–23. Though neither party disputes or even discusses the Board's IRA jurisdiction over the alleged personnel actions to the extent they occurred before the effective date of the WPEA, having reviewed the administrative judge's earlier jurisdictional rulings, we view the Board as finding that Dr. McLean's protected activity also constituted protected disclosures under section 2302(b)(8). *See* IRA Jurisdiction Ruling at 2–6, *McLean v. Dep't of Veterans Affs.*, No. DE-1221-22-0142-W-1 (Apr. 26, 2022), Tab 12; Amended IRA Jurisdiction Ruling at 1–2, *McLean*, No. DE-1221-22-0142-W-1 (Jan. 26, 2023), Tab 42.

[5]     The Board treated the suspension and the removal as a single personnel action.

working with and evaluating or instructing surgical residents beginning in August 2010. *Id.* at 19–20. The administrative judge's initial decision later became the final decision of the Board. *See* 5 C.F.R. § 1201.113.

Dr. McLean timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of a final decision by the Board is limited by statute. We must affirm unless the decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Miller v. Dep't of Just.*, 842 F.3d 1252, 1257 (Fed. Cir. 2016). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller*, 842 F.3d at 1258 (citation omitted). "The petitioner bears the burden of establishing reversible error." *McIntosh v. Dep't of Def.*, 53 F.4th 630, 638 (Fed. Cir. 2022).

### I

Dr. McLean begins his argument by alleging several factual and procedural errors. *See* Pet'r's Br. 1–5. We are unpersuaded by these arguments.

As an initial matter, Dr. McLean's arguments do not heed the standard of review on appeal. For example, Dr. McLean asserts that certain findings of the Board are "wrong," and he speculates that if the PSB had been aware of the potential bias by the FPPE proctors, Drs. Van Landingham and Montecino—who had been criticized by Dr. McLean in the Malik AIB testimony—then "it is more probable than not that the other four non-surgeon PSB members would have voted to not suspend [Dr. McLean]." Pet'r's Br. 2–3. "Our function as a reviewing court, however, is not to engage in such *de novo* fact finding, but

only to determine whether the Board's factual findings are supported by substantial evidence." *Bevans v. Off. of Pers. Mgmt.*, 900 F.2d 1558, 1565 (Fed. Cir. 1990).

Some of Dr. McLean's arguments also misunderstand the Board's decision. For example, Dr. McLean argues that the Board ignored that VA physicians are not to be disciplined or placed under a FPPE "for a single bad outcome." Pet'r's Br. 2. The Board, however, found that it was "well-established [Dr. McLean] engaged in extremely concerning Operating Room behavior on December 29, 2010 *and* January 18, 2011," and "the FPPE revealed even more concerns about [Dr. McLean's] Operating Room behavior." *Decision* at 23 (emphasis added). This finding is supported by substantial evidence of Dr. McLean's substandard performance and concerning behavior.

Dr. McLean also argues that the VA, and in particular the AIB, committed certain procedural errors. Dr. McLean asserts that he was "prohibited from putting on evidence or cross-examining witnesses" before the AIB, Pet'r's Br. 2, and that the AIB "took testimony from only selected witnesses," *id.* at 5. Dr. McLean cites to VA Handbook 0700, but the handbook belies his argument by explaining that due process rights, such as the "right to review or to challenge adverse evidence," are "inapplicable to administrative investigations" conducted by an AIB. VA Handbook 0700 App. I at I-1 (July 31, 2002); *see Hannah v. Larche*, 363 U.S. 420, 442 (1960) ("[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used."). Dr. McLean also asserts that the VA "violated its policies and [his] due process rights." Pet'r's Br. 5. Dr. McLean appears to refer first to his argument that VA policy required FPPEs to be "of short duration," but the documents that he cites do not mention such a policy. *Id.* at 14–15. He also appears to refer to his argument that the deciding official violated his due process

rights in reaching the removal decision. *Id.* at 15–16. However, a majority of the DAB concluded that the deciding official's procedural error in failing to fully review Dr. McLean's responses to his proposed removal was not harmful, *see* Appx. 2027, and the DAB's decision reviewing his removal is not on direct appeal before the Board or us in this IRA appeal. *Cf.* 38 U.S.C. § 7462(f) (providing for judicial review of a final order or decision of a DAB).

## II

Dr. McLean next argues that the Board erred in its analysis of his prima facie case for whistleblower reprisal and in its analysis of the *Carr* factors. To succeed on an IRA appeal alleging a prohibited personnel practice, an employee must demonstrate by preponderant evidence that the employee made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and the protected disclosure or activity contributed to the agency's personnel action. *See Miller*, 842 F.3d at 1257; 5 U.S.C. § 1221(e)(1). The agency can then rebut the employee's prima facie case by demonstrating by clear and convincing evidence that it would have taken the same personnel action absent the whistleblowing. *See Miller*, 842 F.3d at 1257; 5 U.S.C. § 1221(e)(2). "'Clear and convincing' evidence has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Miller*, 842 F.3d at 1257–58 (citation omitted). The three *Carr* factors are used in evaluating whether the agency has met its burden:

> [1] the strength of the agency's evidence in support of its personnel action;
>
> [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and

> [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr*, 185 F.3d at 1323.

We first address Dr. McLean's argument that the Board incorrectly found that he had not made a prima facie case of whistleblower reprisal because he failed to prove an alleged restriction on his working with surgical residents.[6] *See* Pet'r's Br. 6–7. The Board supplied two independent reasons for that finding: (1) Dr. McLean "failed to offer credible evidence regarding any 2010 restrictions on working with residents," and (2) he failed to prove that such a restriction would constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii). *Decision* at 19–20. Dr. McLean challenges only the second basis, and does not point to any evidence that the Board overlooked in finding no credible evidence of such a restriction. Thus, regardless of whether the alleged restriction could constitute a personnel action, we see no reason to disturb the Board's finding that Dr. McLean offered no evidence of that restriction and therefore failed to establish a prima facie case as to that restriction.

---

[6]  Dr. McLean in part misunderstands the Board's decision. The Board did not, as he asserts, "terminate[] its review of [his] *prima facie* case concerning his 2010 OSC[] disclosures." Pet'r's Br. 6. The Board found that Dr. McLean's 2010 OSC complaint "qualified for whistleblower protection" and that it contributed to his 2012 suspension and 2014 removal. *Decision* at 18–22. Dr. McLean also appears to incorrectly view the Board's decision as addressing whether his FPPE constituted a personnel action. *See* Pet'r's Br. 6–7.

Next, we address Dr. McLean's argument that the Board erred in its analysis of the *Carr* factors.

Beginning with *Carr* factor one, Dr. McLean argues that the DAB ignored evidence favorable to Dr. McLean and relied on evidence allegedly fabricated by the VA. *See* Pet'r's Br. 7–10. Dr. McLean's arguments, again focusing on the DAB proceeding, do not undermine the Board's analysis of factor one. The Board found that Dr. McLean's "extremely concerning Operating Room behavior" was "well-established" and justified the AIB investigation, which was "conducted by outside unbiased experts." *Decision* at 23. "[B]ased on overwhelming evidence," the AIB, critical of Dr. McLean's medical practices, recommended the FPPE, which "revealed even more concerns" and led to Dr. McLean's suspension and proposed removal. *Id.* at 23–24. Finally, the DAB—consisting of "three experienced surgeons"—conducted a "comprehensive hearing," "carefully analyzed" the "extensive evidence," including by ruling in Dr. McLean's favor on several of the specifications, and unanimously sustained the charge and the penalty. *Id.* at 14 n.15, 24. The Board's finding that *Carr* factor one "weighed heavily in favor of" the VA is supported by substantial evidence. *Id.* at 23.

Dr. McLean next argues that the Board incorrectly found that the VA "met its burden" and "prevail[ed]" with respect to *Carr* factor two. Pet'r's Br. 10, 17. This argument misunderstands both the framework of the *Carr* factors and the Board's findings on the second factor. *Carr* does not require that "each factor weigh in favor of the agency for the VA to carry its burden." *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1019 (Fed. Cir. 2019). Indeed, the Board determined that "the second *Carr* factor weighed in favor of" Dr. McLean. *Decision* at 25. The Board found that VA "management was clearly on notice" of Dr. McLean's repeated criticism of his colleagues and managers, and knowledge of those criticisms would

"suggest the existence and strength of a motive to retaliate." *Id.* at 25–26. However, the Board reasonably found that the strength of that motive was somewhat diminished by several factors, including, for example, that evidence of Dr. McLean's misconduct was collected and analyzed by the independent, outside experts who comprised the AIB and the DAB. *Id.* at 26. Substantial evidence supports the Board's findings for *Carr* factor two.

Finally, Dr. McLean takes issue with the Board's *Carr* factor three analysis. The Board found that each party had provided "some comparator evidence." *Id.* at 28. The comparator in the VA's favor was Dr. Mohapatra, a VA doctor and non-whistleblower who was "removed for misconduct which was *less concerning* than" Dr. McLean's. *Id.* at 27. Dr. McLean argues that Dr. Mohapatra was an improper comparator because of certain differences between them, such as the two doctors working at different hospitals and having different duties. This argument invokes an overly restrictive view of what it means for a comparator to be similarly situated under *Carr* factor three, akin to the "nearly identical" standard we have previously rejected. *See Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1373 (Fed. Cir. 2012). In Dr. McLean's favor on factor three, the Board found that Dr. McLean had put management on notice of alleged misconduct by three non-whistleblower doctors, including Drs. Van Landingham and Montecino, and "there was no credible evidence management did much if anything about it." *Decision* at 28. Weighing the competing comparator evidence, the Board reasonably determined that *Carr* factor three was neutral. *Id.*; *see, e.g.*, *Robinson*, 923 F.3d at 1020 ("This mixed record causes the last *Carr* factor to be neutral. Accordingly, it was not unreasonable for the [administrative judge] to count it as neutral.").

The Board ultimately determined that the strength of factor one in the VA's favor outweighed that of factor two in Dr. McLean's favor, and thus found that the VA satisfied its

burden by clear and convincing evidence. *Decision* at 28–29. Substantial evidence supports the Board's findings, and we may not reweigh the evidence on appeal as Dr. McLean asks us to do. *See McIntosh*, 53 F.4th at 643; Pet'r's Reply Br. 14.

## CONCLUSION

We have considered Dr. McLean's remaining arguments—including his final argument speculating that the Board was biased against him because of the potential value of the backpay if his request for corrective action were to be granted—and find these arguments unpersuasive. Accordingly, we *affirm* the Board's final decision.

## **AFFIRMED**

### COSTS

No costs.